Bell, J.,
dissenting. The interpretation of Section 1533.32, Revised Code, as a criminal statute, thus warranting the strict construction given it in the majority opinion, is, in my opinion, an unreasonable one and one that effectively ignores the real purpose and actual application of the statute.
Section 1533.33, Revised Code, provides that “all moneys derived from fishing licenses issued pursuant to Section 1533.32 of the Revised Code are hereby appropriated exclusively for the use of the Department of Natural Resources for the following purposes * * Then follow eight stated purposes all having to do with the propagation and stocking of fish, the building of dams, the improvement of streams and lakes, the procuring of more public fishing waters and other practical fish management work. The statute concludes as follows:
*42 “No funds derived from fishing licenses shall be spent for other than fishing purposes as defined in this section. Not more than 25 per cent of such moneys shall be used for the payment of administration or other overhead expenses of the council and the division of wildlife, and the remaining 75 per cent shall be used exclusively for the purchase, protection, propagation, preservation, stocking of fish, and for the purposes listed in this section. The Director of Natural Resources shall annually budget said funds and shall have exclusive authority to draw warrants upon such funds.”
Official records of the state of Ohio, maintained by the Department of Natural Resources, the Auditor of State and the Treasurer of State, show that in the year 1959, the last full year for which such records are available, 792,931 resident fishing licenses were sold in Ohio. This resulted in revenues to the state, appropriated exclusively for the use of the Department of Natural Resources, amounting to $1,585,862. In addition, 10,866 persons paid $54,330 for annual nonresident licenses, and an additional 9,664 paid $28,992 for temporary nonresident licenses.
During the same period of time, fines collected as a result of fishing license violations and similarly appropriated exclusively for the use of the Department of Natural Resources (Section 1531.17, Revised Code), amounted to only $22,308.80.
With the exception of some federal grants, and with the exception of one $15,000 appropriation by the General Assembly in 1931 (Amended Senate Joint Resolution No. 31, 114 Ohio Laws, 885, authorizing the appointment of a committee of the Legislature to make a survey relative to the conservation of game and commercial fish in Lake Erie), the entire fish promotion program of the state of Ohio has, since 1912, been financed exclusively from revenues obtained from the sale of fishing licenses, augmented minimally by some money derived from the imposition of fines. Section 1533.32, Revised Code, although basically regulatory in nature, is in its practical application a revenue-producing statute and is no more a criminal statute than is the city income tax ordinance which provides for the filing of an affidavit against and the imposition of a fine upon one who neglects to pay the tax. Distasteful as they may be to some people, income tax laws are not criminal statutes.
*43 Nearly one-tenth, of the residents of Ohio annually buy resident fishing licenses. Add to those who buy licenses those who fish but who are specifically exempted from the license requirements, and the fishing fraternity becomes an even larger segment of our society. The Department of Natural Resources, and particularly the wildlife division of that department, has made a continuing effort to improve conditions under which those persons can pleasurably consume their leisure time. If a reasonable interpretation can be given to the licensing statute so as to promote the work being accomplished with the only moneys available therefor, i. e., license revenues, in my opinion, the statute should be so construed.
The majority opinion limits the word, “of,” in the phrase, “waters of the state,” to those waters which “indicate some kind of ownership relationship between the state and the waters in question,” i. e., waters actually owned by the state or navigable waters in which the public has a right of navigation.
That conclusion is buttressed in the opinion by a comparison of Section 1533.32, Revised Code, with Section 1533.10, Revised Code, which, in requiring a hunting license, does not specify the “lands of the state” as being the only ones on which a hunting license is required. The reasons for the difference should be obvious. Ohio can require a hunting license only on land encompassed within its borders, just as it can require a fishing license only on its own waters. The difference lies in the fact that fish are capable of life and movement only in water. And certain streams and lakes bordering on Ohio are not Ohio streams or lakes; hence the fishing license limitation to “waters of the state” and the lack of need for any such limitation so far as hunting wild birds and quadrupeds is concerned.
As indicated in all the current dictionaries, and particularly in Webster’s New International Dictionary (2 Ed.), by Anglo-Saxon times the word, “of,” had already developed in various uses in expressions involving the idea of moving or resulting from. Thus, the development of the word as reported in the first definition given in Webster’s Third New International Dictionary is, “used as a function word to indicate the place or thing from which anything moves, comes, goes, or is directed or impelled.” In the same dictionary, the seven *44 teenth definition given for the word is, “used as a function word indicating a possessive relationship.”
Although finality of meaning need not be assumed by the fact alone of placement in a list of definitions, the interpretation given the word by lexicographers is, to say the least, indicative of the reasonableness of interpreting the word, as used in this statute, broadly to mean “within” rather than to give it the narrower meaning of “belonging to.”
Water in a pond or lake, whether it be in a public or private impoundment, must originate somewhere. Cyclically, it moves from the earth to the earth, either directly from and to the pond by evaporation and rainfall or indirectly by evaporation from other waters and, by way of rainfall and drainage, from other lands to the pond. By whatever method it gets into a private impoundment in Ohio, it comes primarily from lands within the state of Ohio. Particularly is this true of the head-water lake created by the damming of a drainage ditch. In my opinion, such an impoundment is a water “of the state,” and he who fishes therein, whether for free or for pay, is, unless exempted by the statute, subject to the license requirements thereof.
This interpretation is, in my opinion, further borne out by Section 1531.01, Revised Code, where the following definition appears: “ ‘Waters’ includes any lake, pond, reservoir, stream, channel, lagoon, or other body of water, or any part thereof, whether natural or artificial.”
This does not mean, however, that possession of a fishing license in itself gives one the right to fish in any private waters. Private rights may still be safeguarded by the requirement of permission or payment of a fee just as they presently are maintained so far as hunting on another’s land is concerned.
O’Neill, J., concurs in the foregoing dissenting opinion.